IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMICA SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-3355-S-CV-DGK |
| | ) | |
| THE PRUDENTIAL INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

This case arises from Plaintiff Tamica Shaw's claim for benefits and statutory penalties under an accidental death and dismemberment ("AD&D") policy ("the Policy") purchased from Defendant The Prudential Insurance Company of America ("Prudential") through her employer, JPMorgan Chase Bank, N.A. ("Chase"). The current action originated in state court and was removed to this Court by the Defendant on September 2, 2010 (Doc. 1). On March 21, 2011, the Court denied Plaintiff's motion to remand, holding that it had federal question jurisdiction pursuant to the Employee Retirement Income Security Act ("ERISA") (Doc. 38).

Pending before the Court is Defendant's "Motion for Partial Summary Judgment" (Doc. 55); Plaintiff's "Suggestions in Opposition" (Doc. 86); and Defendant's "Suggestions in Reply" (Doc. 87). Also pending before the Court is Defendant's "Motion to Strike Jury Trial" (Doc. 57), Defendant's "Suggestions in Support" (Doc. 58), Plaintiff's "Suggestions in Opposition" (Doc. 65), and Defendant's "Reply" (Doc. 74). Having fully considered Defendant's motion and Plaintiff's response, the Court grants Defendant's motion for partial summary judgment, finding that the benefits Plaintiff seeks to recover under the AD&D policy are governed under ERISA, as

1

an employee welfare benefit plan, and that accordingly, Plaintiff's state law claim is preempted. Because jury trials are unavailable under ERISA, Defendant's motion to strike jury trial is also granted.

**Background**

The undisputed facts are as follows. On March 4, 2006, Plaintiff's husband, Charles Shaw, was killed in an automobile accident in Springfield, Missouri. Subsequently, Plaintiff made a claim for accidental death and dismemberment insurance ("AD&D") through Prudential. Prudential found that that the decedent exceeded the blood alcohol level to legally operate a motor vehicle under Missouri state law and that the decedent was driving with a suspended license at the time of the accident. It thereafter denied Plaintiff's claim. On July 27, 2010, Plaintiff filed suit against Defendant in the Circuit Court of Greene County, Missouri, alleging breach of her AD&D policy and seeking damages of at least $655,000. Prudential removed the action to this Court on September 2, 2010, alleging ERISA pre-emption, federal question jurisdiction, and diversity jurisdiction.

The parties dispute most other relevant facts, particularly those surrounding the maintenance and administration of the AD&D policy. Defendant contends that the instant case arises out of a claim for AD&D benefits under an ERISA governed employee welfare benefit plan ("the Plan") that was established by Chase in January 1992, restated in January 2005, and currently sponsored, maintained, and administered by Chase. This Plan, Defendant argues, is a "wrap plan" that incorporates by reference the individual constituent benefit programs offered by Chase to its eligible employees including, *inter alia*, medical, dental, life insurance, AD&D coverage, disability, and severance benefits. These benefits are funded through a VEBA Trust, which is maintained through both employer and employee contributions. Trust assets are also

used to defray the administrative expenses of the Plan. The AD&D benefits distributed to individuals are funded through a group insurance contract that was issued by Prudential to Chase. Among other benefits, the group insurance contract offered to employees provides basic and supplemental insurance coverage, dependent term life coverage, and AD&D coverage. Chase pays 100% of the premiums for the mandatory basic life insurance coverage, and Chase employees pay the full cost of the voluntary AD&D and supplemental life insurance.

Plaintiff contests Defendant's characterization of the AD&D benefits and contends that the claim at issue is nothing more than a breach of contract claim between Plaintiff and Prudential. Plaintiff denies that the AD&D policy at issue is a Chase sponsored, maintained, or administered ERISA governed plan or that Chase helped fund AD&D coverage through the VEBA trust. Most significantly, Plaintiff challenges Defendant's characterization of the AD&D benefits as part of a larger employee welfare benefit wrap-plan and categorizes the benefits solely as a contract for insurance between the two parties to the litigation.

On October 1, 2010, Plaintiff moved to remand the case to state court arguing that this Court lacked federal question jurisdiction to hear the case (Doc. 10). On March 21, 2011, this Court rejected those arguments, holding that Plaintiff's case was properly removed from state court because Plaintiff pled federal ERISA claims in her Complaint (Doc. 38). Plaintiff subsequently moved to amend her Complaint, and with leave of the Court, filed her First Amended Complaint (Doc. 45), alleging two Counts, one under Missouri State law and the second, in the alternative, under ERISA. In Count 1, Action for Breach of Insurance Contract, Plaintiff alleges that she is entitled to accidental death and dismemberment benefits and statutory penalties for vexatious denial of an insurance claim under Section 375.420 RSMo. In the

alternative, Plaintiff alleges Count II under ERISA. Defendant now moves to dismiss Plaintiff's state law breach of contract and bad faith claim as preempted under ERISA.

## Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must evaluate the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

## Discussion

Plaintiff originally filed this action in state court asserting claims for benefits and statutory penalties pursuant to ERISA. In Plaintiff's initial Complaint, she asserted that she was "entitled to file this lawsuit under the Employee Retirement Income Security Act (ERISA)" (Doc. 1). Now, despite having pled ERISA claims in her original Complaint, Plaintiff opposes Defendant's motion to strike her state law claims based upon ERISA preemption, arguing first

4

that she only averred her claims could be asserted under ERISA, not that she was actually asserting them on those grounds, and second, that removal was improper because she was pleading her ERISA claims only in the alternative.

### A. The AD&D policy at issue is an ERISA governed employee welfare benefit plan.

ERISA applies "to any employee benefit plan if it is established or maintained by an employer." ERISA § 4; 29 U.S.C. § 1003. Defendants contend that the Policy issued to Plaintiff is part of an "employee welfare benefit plan," defined as: "a plan, fund, or program . . . established or maintained . . . by an employer . . . for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, death, or unemployment." ERISA §3(1); 29 U.S.C. § 1002(1). Plaintiff, however, maintains that the Policy is not an employee welfare benefit plan because Chase, the employer, does not administer the plan through an ongoing administrative scheme.

The crux of Plaintiff's argument is that the Policy at issue is not an "employee welfare benefit plan" subject to ERISA because it was not "established or maintained" by the employer as required by 29 U.S.C. § 1002(1). Specifically, Plaintiff maintains that her claim is one under the specific insurance contract between Plaintiff and Prudential and does not involve a larger employer-sponsored plan or administrative scheme. In support of this assertion, Plaintiff argues that the AD&D coverage is not funded by the employer but rather through Plaintiff-paid premiums. Plaintiff also cites her entitlement to one lump sum of money as evidence that the employer is not involved plan maintenance based on the assumption that lump sum payments require no ongoing administration. Accordingly, Plaintiff maintains that "Defendant has failed to set forth undisputed facts which show, as a matter of law, that the claim on *the policy*, rather than the 'plan,' is governed by ERISA" (Doc. 86) (emphasis in original).

5

Prudential, on the other hand, interprets the AD&D Policy as one component of Chase's larger employee welfare benefit wrap-plan—the Plan—which provides medical, dental, life insurance, AD&D coverage, disability, and severance benefits to Chase employees. Defendant maintains that Chase was the named Plan administrator for the entire wrap-plan, responsible for managing the day-to-day operations of the Plan, including enrolling participants in the Plan, communicating benefits to participants, and assisting with the processing of claims. As such, Prudential argues that even though it was the claims administrator for the specific AD&D policy, the policy is governed by ERISA because Chase sponsored and maintained a comprehensive employee welfare benefit plan of which the AD&D policy was one component part.

At the heart of the parties' disagreement is whether the Policy at issue is part of a larger employee welfare benefit plan. Neither party cites case law regarding how to construe component parts of a larger employee wrap-plan subject to ERISA. In addition, neither party addresses the fact that while Chase considers its entire wrap-plan to be *one* comprehensive benefits plan governed by ERISA, each benefits program described in the Group Insurance Contract is labeled by Chase and Prudential as "a plan" (D000526, D000751). Because the Court finds that the AD&D coverage meets the requirements of an employee welfare benefit plan even without consideration of whether it is part of a larger wrap-plan, the Court bases its decision on this determination.

"An employer's decision to extend benefits does not constitute, in and of itself, the establishment of an ERISA plan." *Kulinski v. Medtronic Bio-Medicus, Inc*. 21 F.3d 254, 256 (8th Cir. 1994). To determine whether the AD&D policy at issue is an employee welfare benefit plan, "the pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits." *Id*. at 257 (citing *Fort Halifax Packing*

*Co. v. Coyne*, 482 U.S. 1 (1987)). In considering whether Chase "established or maintained" the Policy such that it was an employee welfare benefit plan, "the court should [focus] on the employer . . . and [its] involvement with the administration of the plan." *Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449, 1452 (5th Cir.1991).

Here, the Court finds that Chase established and maintained an employee welfare benefit plan governed by ERISA to provide AD&D benefits to employees and their dependents. First, the AD&D plan clearly provides for ERISA covered benefits, namely AD&D coverage, to eligible Chase employees. Second, the AD&D plan was established and maintained by Chase, who is the named plan Administrator with responsibility for managing its day-today operations. For example, the plan administration handbook given to employees directs employees to call the Chase Benefits Call center as the primary contact for all inquiries relating to the "general administration of the JPMorgan Chase Life and Accident Insurance Plan" (D000743). The handbook similarly directs claimants to call the Benefits Call Center to speak with a service representative "[i]f you or your beneficiary needs to file a claim for Life and Accident Insurance Plan benefits" (D000741). Finally, as Defendant notes, but for the fully-insured Group Insurance Contract offered through Chase's comprehensive employee welfare benefit wrap-plan, Plaintiff could not, on the same terms, have insured her husband under the optional dependent AD&D coverage.

Accordingly, the Court finds that the AD&D insurance policy at issue is a plan established and maintained by the employer for the purpose of providing its participants and their beneficiaries with benefits in the event of accident through the purchase of insurance. ERISA §3(1); 29 U.S.C. § 1002(1).

7

Case 6:10-cv-03355-DGK   Document 89   Filed 02/09/12   Page 7 of 12

## B. The AD&D policy is not subject to ERISA's Safe Harbor Provision.

Plaintiff next argues that even if the AD&D policy meets the requirements of an employee welfare benefit plan within the meaning of ERISA § 3, it is excluded from ERISA coverage under the safe harbor provisions of 29 C.F.R. § 2510.3-1(j). Under the Safe Harbor provision, ERISA does not apply to insurance programs in which:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). In order to be exempt from ERISA, a plan must satisfy all four of the Safe Harbor criteria. *Kanne v. Connecticut General Life Ins.*, 867 F.2d 489, 492 (9th Cir. 1988). These requirements are strict, and failure to meet one renders the Safe Harbor exception inapplicable. *See Dam v. Life Ins. Co of N. Am.*, 206 Fed. Appx. 626, 627 (8th Cir. 2006).

Plaintiff argues that the Safe Harbor provision clearly applies to the Policy because Plaintiff alone paid all premiums on the subject AD&D coverage, participation in the Policy was completely voluntary, and Chase received no consideration in connection with the Policy. However, Defendant again argues that the AD&D policy must be considered in conjunction with

the rest of the group insurance as part of one overarching plan to provide benefits to employees. Defendant argues that Chase did contribute to the Policy through the establishment of the VEBA trust which provided for employer contributions to cover the premium for the basic life insurance and employee contributions to cover the premium for the AD&D coverage. In the same vein, Defendant argues that participation in the overall wrap-plan was not voluntary because under the terms of the comprehensive plan, all full-time employees were automatically enrolled in the basic life insurance coverage.

Again, the Court declines to determine whether it must consider the AD&D policy separately or in conjunction with Chase's comprehensive wrap-plan. Considered alone, however, the AD&D plan fails to satisfy the third requirement of the safe harbor—that the "sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer." Because the AD&D plan does not satisfy this requirement, it is excluded from the Safe Harbor provision.

In analyzing the third element of the Safe Harbor, the Department of Labor has provided guidance that "[a]n endorsement within the meaning of section 2510.3-1(j)(3) occurs if the employee organization urges or encourages members' participation in the program or engages in activities that would lead a member reasonably to conclude that the program is part of a benefit arrangement established or maintained by the employee organization." Dep't of Labor Op. No. 94-26A (1994); *see also Edwards v. Prudential Ins. Co. of America*, 213 F. Supp. 2d 1376, 1384 (S.D. Fla. 2002). Thus, endorsement will be found where, as here, the employer holds the benefits out as part of an ERISA governed plan.

9

Chase clearly endorsed the Plan at issue here. To begin, Chase is the named plan Administrator, with responsibility for providing participants with claim forms and plan documents and for the daily administration of the plan. *See Arbor Health Care Co. v. Sutphen Corp.*, 181 F.3d 99 (6th Cir. 1999) ("We also note that the third criterion for ERISA exclusion cannot be met because Sutphen 'endorsed' the employee health benefit plan, it is named as the plan administrator, and . . . claims for plan benefits [were submitted] through Sutphen personnel."); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 493 (9th Cir. 1988) ("It is clear that, at a minimum, ABC does not merely advertise the group insurance, but rather, as the administrator of the plan, "endorses" it within the meaning of 29 C.F.R. § 2510.3-1(j)(3)"). Additionally, Chase is the named "plan sponsor" with authority under the plan to amend its terms or terminate the programs. It is also the agent for service of process for claims arising under and against the plan (D00601).

Finally, the Court notes that the plan and Certificate of Coverage specifically provide that the AD&D plan is governed by ERISA. While not conclusive on the subject, courts have found that this invocation is sufficient to invoke ERISA coverage. *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 436 (6th Cir. 1996) ("[W]here the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework."); *Wickman v. Nw. Nat'l Ins. Co.,* 908 F.2d 1077, 1083 (1st Cir. 1990) (stating the employer "distributed a handbook containing a listing of ERISA rights and a summary plan description" and noting that "such a booklet, detailing ERISA rights, is strong evidence that the

10

employer has adopted an ERISA regulated plan"). Plaintiffs have provided no contrary authority.

Accordingly, the Court finds that these factors are sufficient to establish the level of endorsement necessary to take AD&D policy at issue outside of the ERISA safe harbor.

### C. ERISA preempts Plaintiff's state law claims.

An employee covered by an ERISA plan can file suit to recover benefits provided through that plan only under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09 (2004). Thus, ERISA preempts all state law claims which "relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law claim "relates" to an employee benefit plan if it has a "connection with or reference to such a plan." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). The Supreme Court has held that ERISA preempts state common law tort and contract actions, including bad faith claims, "asserting improper processing of a claim for benefits under an ERISA-regulated plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987). The Eighth Circuit has similarly held that state law breach of contract claims seeking benefits under an ERISA governed plan are preempted. *See, e.g.*, *Howard v. Conventry Health Care of Iowa, Inc.*, 293 F.3d 442 (8th Cir. 2008).

In Count I of her Complaint, Plaintiff asserts a breach of contract claim under Missouri state law, averring that she is entitled to recover $655,000 in AD&D benefits under her policy for the death of her husband. Plaintiff further alleges that "Prudential's refusal to pay [her] claim was in bad faith and vexatious; and as a result, [she] is entitled to damages, penalties and reasonable attorney's fees, by law, including under Section 375.420 RSMo." Because Plaintiff's claims in Count I relate to an ERISA governed plan as established above, this claim is preempted. Therefore, the claims are dismissed with prejudice.

11

### D. Plaintiff's request for a jury trial is stricken.

A motion to strike a jury demand is properly made under Rule 39, which states:

> When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless: . . . (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

Fed. R. Civ. P. 39(a)(2). A motion to strike a jury demand can be made at any time. *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 226-27 (3d Cir. 2007). However, lawsuits brought under ERISA seek equitable relief and there is thus no right to a jury trial in such actions. *See Langlie v. Onan Corp.*, 192 F.3d 1137, 1141 (8th Cir. 1999). Because Plaintiff's state law claims are preempted, leaving Plaintiff's only claim against Defendant as one under ERISA, Defendant's motion to strike jury trial is granted.

## Conclusion

For the foregoing reasons, Defendant's partial summary judgment motion (Doc. 55) and motion to strike jury trial (Doc. 57) are granted.

**IT IS SO ORDERED.**

Date:  February 9, 2012                              /s/ Greg Kays
                                                                     GREG KAYS, JUDGE
                                                                       UNITED STATES DISTRICT COURT