IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| TAMICA SHAW, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 10-3355-S-CV-DGK |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) ) ) ) ) |
| Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case arises from Plaintiff Tamica Shaw's claim for benefits and statutory penalties under an accidental death and dismemberment ("AD&D") policy purchased from Defendant The Prudential Insurance Company of America ("Prudential") through her employer, JPMorgan Chase Bank, N.A. ("Chase").

Pending before the Court are cross-motions for summary judgment on behalf of Plaintiff Tamica Shaw and Defendant Prudential.[1]  Having fully considered the arguments on behalf of both parties, the Court GRANTS Defendant's motion for summary judgment (Doc. 91) and DENIES Plaintiff's motion for summary judgment (Doc. 93).

---

[1] In ruling on these motions, the Court has also considered: Prudential's "Motion for Summary Judgment on the Merits" (Doc. 91); Prudential's "Suggestions in Support" (Doc. 92); Plaintiff's "Suggestions in Opposition" (Doc. 97); Plaintiff's "Motion for Summary Judgment" (Doc. 93); Plaintiff's "Suggestions in Support" (Doc. 94); Prudential's "Combined Suggestions in Response to Plaintiff's Motion for Summary Judgment and Reply in Support of Prudential's Motion for Summary Judgment" (Doc. 100); and Plaintiff's "Reply" (Doc. 101).

1

**Background**

On March 4, 2006, Plaintiff's husband, Charles Shaw, was killed in an automobile accident in Springfield, Missouri. Subsequently, Plaintiff made a claim for $600,000 in accidental death and dismemberment insurance ("AD&D") through Prudential. On June 21, 2006, after reviewing the case, Prudential found that at the time of the accident the decedent had a blood alcohol level exceeding the legal limit to operate a motor vehicle under Missouri state law and accordingly denied Plaintiff's AD&D claim under a coverage exclusion for "an accident that occurs while operating a motor vehicle involving the illegal use of alcohol." As support for its decision, Prudential cited the toxicology report from the medical examiner's office which concluded that Mr. Shaw had a blood alcohol level of 0.126% at the time of his death (D0038-40).

Plaintiff appealed that decision, through her attorney, in two separate letters dated October 2, 2006 and February 7, 2007, arguing that she was entitled to benefits because neither the certificate of death nor the police report listed alcohol as a contributing factor in her husband's death (D0053, D00133). On March 12, 2007, Prudential issued a letter, upholding its original claims decision finding that the alcohol exclusion in the AD&D policy prevented coverage (D00139). After receiving and reviewing additional records for Mr. Shaw, Prudential revised its letter, citing alcohol consumption and a felony exclusion[2] as an additional reason for denying coverage. On July 30, 2007, Plaintiff appealed to Prudential's Appeal Review Committee for a final decision on Prudential's May 10, 2007 decision denying her AD&D

---

[2] Specifically, Prudential found that because Mr. Shaw was driving with a suspended license at the time of the accident, due to four prior criminal convictions, he was committing a class D felony under RSMo § 302.321 and was not eligible for benefits under the policy.

benefits.  On September 28, 2007, Prudential issued its final determination denying Plaintiff coverage.

On July 27, 2010, Plaintiff filed suit against Defendant in the Circuit Court of Greene County, Missouri, alleging breach of her AD&D policy and seeking damages of at least $655,000.  Prudential removed the action to this Court on September 2, 2010, alleging ERISA pre-emption, federal question jurisdiction, and diversity jurisdiction.

On October 1, 2010, Plaintiff moved to remand the case to state court arguing that this Court lacked federal question jurisdiction to hear the case (Doc. 10).   On March 21, 2011, this Court rejected those arguments, holding that Plaintiff's case was properly removed from state court because Plaintiff pled federal ERISA claims in her Complaint (Doc. 38).  Plaintiff subsequently moved to amend her Complaint, and with leave of the Court, filed her First Amended Complaint, alleging two Counts, one under Missouri State law and the second, in the alternative, under ERISA (Doc. 45).  On February 9, 2012, this Court issued an order granting Defendant's motion for partial summary judgment, finding that Plaintiff's claims were governed by ERISA and dismissing Plaintiff's state law claim (Doc. 89).  The only issue remaining in the case is whether Prudential's denial of Plaintiff's claim for AD&D benefits should be upheld.

**Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).  When considering a motion for summary judgment, a court must evaluate the evidence

in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

## Discussion

**A. The Court reviews Prudential's decision under a deferential, arbitrary and capricious standard.**

The first matter the Court must resolve is under what standard it should review Prudential's decision to deny Plaintiff AD&D benefits. "Where an ERISA plan grants the administrator discretion to determine eligibility for benefits and to interpret the plan's terms, courts must apply a deferential abuse-of-discretion standard of review." *Green v. Union Sec. Ins. Co.,* 646 F.3d 1042, 1050 (8th Cir. 2011) (citing *Midgett v. Wash. Group Int'l Long Term Disability Plan*, 561 F.3d 887, 893 (8th Cir. 2009)). Under an abuse of discretion standard, the administrator's decision should be reversed "only if it is arbitrary and capricious." *Midgett*, 561 F.3d at 896. The administrator's decision should be upheld if it is reasonable and supported by substantial evidence. *Green*, 646 F.3d at 1050. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *River v. Edward D. Jones Co.*, 646 F.3d 1029, 1033 (8th Cir. 2011). It means "more than a scintilla but less than a preponderance." *Hobbs v. Hartford Life and Acc. Ins. Co.*, 751 F. Supp. 2d 1111, 1115 (W.D.

4

Mo. 2010) (quoting *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000)). "The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Midgett*, 561 F.3d at 897 (emphasis in original). If the ERISA plan does not grant discretion to the plan administrator to determine eligibility, the court must review the administrator's decision *de novo*.

Thus, to determine which standard of review to apply, the Court must first determine whether the ERISA plan at issue in this case grants authority to the plan administrator to determine eligibility for benefits. This inquiry rests upon the Court's interpretation of what constitutes the contested ERISA plan in its entirety. The Court confronted this very issue in rendering its prior order for partial summary judgment but declined to address it at that time. However, resolving whether the AD&D policy at issue in this litigation is part of a larger employee welfare benefit wrap-plan is central to determining what standard of review to apply to the present action; therefore, the Court will address that issue now.

Plaintiff maintains that the AD&D policy under which Plaintiff claims benefits is not part of a larger, more comprehensive employer-sponsored welfare benefit plan or administrative scheme. Accordingly, Plaintiff argues that the court should look only to the language of the AD&D policy in determining whether the plan grants discretion to the plan administrator to determine an individual's eligibility for benefits. Because the language of the AD&D policy itself does not grant any discretion to Defendant to interpret the terms of the plan or eligibility under it—such discretion is found only in the Summary Plan Description (SPD)—Plaintiff urges the Court to adopt a *de novo* standard of review.

5

Defendant's position, however, is that the AD&D policy is only one component of a larger employee welfare benefit wrap-plan—the "Master Plan"—which provides medical, dental, life insurance, AD&D coverage, disability, and severance benefits to Chase employees. Stated more clearly, Defendant asserts that Chase has "wrapped" multiple individual policy plans (AD&D, Basic Life Term Insurance, Long-Term Disability, etc.) into one "Master Plan," which is governed not only by the individual policy documents but also by the unifying plan document (the "wrap plan document"),[3] which incorporates the SPDs and vests Defendant with discretion to interpret the terms of the policy.[4] Because the "wrap plan document" contains language incorporating the SPDs and noting that program administrators and their delegates have discretion to determine whether a participant is eligible for benefits,[5] Defendant maintains that its decision to deny benefits should be reviewed under a deferential, abuse of discretion standard.

The Court finds Defendant's argument persuasive. The Eighth Circuit has held that where a wrap plan document provides the governing structure for the overall plan and "describes the general procedures for determining participation, funding, administration, and claims under each individual welfare program," the "Master Plan" consists of the wrap plan document, together with the individual policy plan documents established by the employer. *Admin. Comm.*

---

[3] Accordingly, the "wrap plan document," together with the individual policy plan documents, form what Defendant refers to as the "Master Plan."

[4] It is this "Master Plan," including the "wrap plan document," that Defendant argues the Court should look to in determining whether or not the plan administrator has discretion to make policy determinations regarding Plaintiff's policy.

[5] Plaintiff argues that Defendant should not be allowed to cite to the "wrap plan document" because it was not part of the administrative record and a review for abuse of discretion should be limited only to evidence that was before the administrator at the time of his or her decision. *Jones v. ReliaStar Life Ins. Co*, 615 F.3d 941, 945 (8th Cir. 2010). While this is generally the rule, its applicability makes sense only to the extent the Court is *reviewing* whether the administrator's decision was reasonable. This rule is inapplicable where the Court must *determine* which standard of review to apply. In making that decision, one which was not considered at the administrative level, it is not relevant to consider only that information which was before the administrator. Thus here, in order to determine the preliminary matter of whether the policy granted discretion to the administrator to determine policy eligibility such that the Court should use an abuse of discretion rather than *de novo* standard of review, the Court finds no need to limit inquiry only to documents that were considered by Prudential on administrative review.

*of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Gamboa*, 479 F.3d 538, 542 (8th Cir. 2007). Other courts agree that a wrap plan document constitutes part of the overall plan for purposes of determining who has discretion to make eligibility determinations. *Admin. Comm. for Wal-Mart Stores, Inc. Assocs.' Welfare Plan v. Salazar*, 525 F. Supp. 2d 1103, 1111 (D. Ariz. 2007) ("Therefore, the Court finds the Wrap Document . . . as well as the SPD, shall be considered the Plan governing Plaintiff's ERISA claim."); *Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 302 F. Supp. 2d 1267, 1272 & n.8 (D. Kan. 2004) *aff'd sub nom. Admin. Comm. Of Wal-Mart Associates Health And Welfare Plan v. Willard*, 393 F.3d 1119 (10th Cir. 2004). Consistent with these cases, the Court holds that the "Master Plan" consists of the constituent policy plan documents *and* the "wrap plan document" and, therefore, the Court must consider all these documents in determining who has discretion to make eligibility decisions under the plan. *See Jobe*, at 479 ("As is often the case, the plan is embodied in more than one document.").

With this established, the Court considers the specific documents in this case. Plaintiff likens her case to *Jobe v. Med. Life Ins. Co.* in which the Eighth Circuit considered which standard was appropriate[6] to review an administrator's denial of an insured's claim where the SPD purported to grant full discretion to the plan administrator to determine eligibility for plan benefits but the policy itself was silent regarding such discretion. 598 F.3d 478, 481 (8th Cir. 2010). In its extensive analysis of the issue, the Eighth Circuit held that the language of an SPD prevails over the language in an ERISA plan document in cases where the SPD grants a beneficiary certain rights or privileges that the plan language does not. *Id*. However, where the SPD contradicts the terms of the plan in a way that is less favorable to the insured, the plan and

---

[6] The Eighth Circuit was deciding between an abuse of discretion standard and *de novo* review.

7

not the SPD controls. *Id*. at 483 ("Where the entity seeking enforcement of the summary provision drafted the more detailed policy and can be presumed to know its terms, allowing that party to rely on the summary plan description—which it also drafted—would do little to enhance either party's understanding of their legal rights and responsibilities.").[7]  Thus, the Court determined that because the SPD at issue purported to give the *insurer* greater benefits than it had under the plan, the plan and not the SPD controlled.

Given the Court's interpretation of what constitutes the plan at issue in this case, the Court finds that the present case is distinguishable from *Jobe* in several important ways.  First, in *Jobe*, there was no evidence that the plan incorporated the SPD by reference.  *See Young v. United Parcel Services, Inc. Employees' Short Term Disability Plan*, 416 F. App'x 734, 738 (10th Cir. 2011) (finding that *Jobe* does not apply because the plan at issue in *UPS* expressly incorporates the terms of the SPD, while the plan at issue in *Jobe* does not).  Here, however, while the individual AD&D policy does not incorporate the SPDs by reference, the "wrap plan document" states that the individual SPDs and administrative sections for the component plans are "specifically incorporated by reference" (D00611).  Additionally, in *Jobe*, the plan itself was silent with respect to the program administrator's discretion.  Here, however, Section 4.2 of the "wrap plan document" provides that the program administrators or their delegates have discretion to determine whether a participant is eligible for benefits (D00620).  Thus, *Jobe's* reasoning—that the plan documents control where the SPD, and not the plan documents, vest discretion with the administrator to determine eligibility for benefits—is not applicable here,

---

[7] The Eighth Circuit went on to note that three other circuits had reached similar conclusions that "a grant of discretion to the plan administrator, appearing only in a summary plan description, does not vest the administrator with discretion where the policy provides a mechanism for amendment and disclaims the power of the summary plan description to alter the plan." *Id*. at 484 (citing *Schwartz v. Prudential Ins. Co. of Am.,* 450 F.3d 697, 699 (7th Cir. 2006); *Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1283–84 (11th Cir. 2003); *Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1161–62 (9th Cir. 2001)).

where both the "wrap plan document" and the SPD state that the plan administrator has discretion to determine a participant's eligibility for benefits and the "wrap plan document" incorporates the SPD by reference. *See Kenitzer v. Reliastar Life Ins. Co.*, 2:09CV599DAK, 2011 WL 165313 (D. Utah Jan. 19, 2011) (finding that because the group policy expressly incorporated the SPD, *Jobe* was not on point). Because both the plan, as evidenced by the "wrap plan document," and the SPD states that the claims administrator has sole discretion to determine whether a participant is eligible for benefits (D00620) and because the "wrap plan document" incorporates the individual SPDs by reference (D00611), the Court will review the administrator's decision under an abuse of discretion standard.

**B. There is no genuine issue of material fact that Defendant's decision to deny Plaintiff benefits was not an abuse of discretion.**

Under the abuse of discretion standard of review, the Court must next determine if substantial evidence supports the Defendant's decision to deny Plaintiff benefits, even if the court believes a different, reasonable interpretation could have been made. *Midgett*, 561 F.3d at 897. In applying this standard of review, the Court must consider only that evidence that is part of the administrative record. *Barnhart v. UNUM Life Ins. Co. of Am.*, 179 F.3d 583, 590 (8th Cir. 1999).

> The language of Plaintiff's AD&D policy provided that:
>
> Benefits for accidental Loss are payable only if all these conditions are met:
> (1) The person sustains an accidental bodily Injury while a Covered Person.
> (2) The Loss results directly from that Injury while a Covered Person.
> (3) The person suffers the Loss within 365 days after the accident.
> \*\*\*
>
> A Loss is not covered if it results from any of these:
> \*\*\*

9

> (9) Commission of or attempt to commit a felony.
> ***
> (11) An accident that occurs while operating a motor vehicle involving the illegal use of alcohol, PCP, LSD or other hallucinogens, cocaine, heroin, or other narcotics, amphetamines or other stimulants, barbiturates or other sedatives or tranquilizers or any combination of these substances.

(D00341-43).

In making its decision to deny Plaintiff benefits, Defendant relied upon a toxicology report from the Green County Medical Examiner's Office which indicated that Mr. Shaw's alcohol level was .126% at the time of his death,[8] in violation of Section (11) of the AD&D policy.[9] Additionally, Prudential denied Plaintiff's claim on the basis that Mr. Shaw was operating his vehicle while his license was under suspension, thereby committing a felony[10] in violation of Section (9) of the policy. Defendant argues the administrative record clearly substantiates that Plaintiff was not entitled to benefits since Mr. Shaw was legally intoxicated at the time of his death and was also committing a felony.

Plaintiff contests Defendant's determination for many reasons. First, Plaintiff contends the evidence does not support Defendant's conclusion that Mr. Shaw was driving while intoxicated because neither Mr. Shaw's death certificate nor the police report indicated that Mr. Shaw was driving while legally intoxicated. However, the death certificate and police report were not the only evidence that Prudential considered in rendering its decision. In fact, in their denial letters, Prudential specifically addressed its consideration of these two arguments, noting

---

[8] The level for legal intoxication in Missouri is 0.08%. Mo. Rev. Stat. § 577.012.

[9] Based on this information, Prudential concluded "Carl Shaw's death does not meet the definition of a covered accidental Loss as outlined in Group Policy G-22454. Therefore, we are denying this claim for dependent accidental death benefits" (Doc. 92, at 8).

[10] Mr. Shaw's driver's license had been suspended for a one-year period due to his refusal to take a sobriety test on March 15, 2005 (D00201). Additionally, Mr. Shaw had four prior felony convictions. Mr. Shaw's prior convictions are a matter of public record, of which this Court can take judicial notice. *See, e.g.,* Criminal Case No. 22941-04086-01 (1995); No. 22961-01757B-01 (1996); No. 22981-01887-01 (1998) (all in the 22nd Judicial Circuit, Saint Louis, Mo.). Accordingly, Mr. Shaw's unlicensed driving, in combination with his four prior felony convictions, constituted a felony under Missouri law. *See* Mo. Rev. Stat. § 302.321.

10

that the death certificate and police report are not conclusive on the matter and that the toxicology report had not yet been performed at the time these documents were written. Additionally, as Prudential notes, there is nothing in the plan documents that requires the death certificate to be controlling or binding on the applicability of plan exclusions.

Plaintiff also argues against the validity of the toxicology report, specifically maintaining that the blood alcohol test, upon which the toxicology report relied, failed to comply with Missouri's regulations requiring that: (1) blood testing take place within three hours of the incident; and (2) the person drawing the blood be a licensed physician, registered nurse or trained medical technician and use a sterile needle and container and non-alcoholic antiseptic (D0053).[11] However, these arguments all rely upon the mistaken assumption that Prudential should be required to satisfy a standard of proof that applies to criminal cases. The only applicable Missouri statute governing the present situation states that, "The coroner or medical examiner shall make . . . such tests as are necessary to determine the presence and percentage concentration of alcohol, and drugs if feasible, in the blood of the deceased. The results of these tests shall be included in the coroner's or medical examiner's report to the state highway patrol . . . ." RSMo § 58.445. Additionally, there is evidence in the record that Prudential contacted the

---

[11] Plaintiff cited RSMo § 577.029, and related case law for the proposition that the blood must be drawn by a qualified professional, using a sterile needle and container and non-alcoholic antiseptic (D0053, D00133). Plaintiff also cited RSMo § 577.026, stating that to be valid, blood tests should be done according to the methods and devices approved by the State of Missouri's Department of Health. She also cited RSMo §§ 577.020.3, § 577.020.4, § 577.037.1, § 577.037.4; 13 CSR 50-140.020(1), 13 CSR 50-140.020(5), 13 CSR 50-140.030; and 19 CSR section 25-30.070 and 20-30-.070, as the rules governing the blood analysis procedure. These are all criminal statutes. RSMo § 58.445, which governs the tests to be administered at the time of a fatal accident, states in part: "The coroner or medical examiner shall make, or cause to be made, such tests as are necessary to determine the presence and percentage concentration of alcohol, and drugs if feasible, in the blood of the deceased. The results of these tests shall be included in the coroner's or medical examiner's report to the state highway patrol or the Missouri state water patrol, as required by subsection 1 of this section."

Missouri State Highway Patrol and the coroner to confirm that they used appropriate procedures in drawing, handling, and testing Mr. Shaw's blood samples.[12]

Plaintiff also argues that the toxicology report should be discounted because its results were released nearly two months after the accident occurred whereas the death certificate and police reports were issued immediately after the accident. According to the Criminalist at the Missouri Highway Patrol Crime Laboratory, however, it is not unusual for the Crime Lab to perform testing several months after the accident because tests are "batched" depending on the lab's backlog at the time the blood sample is received (D00201-02).[13]

Plaintiff also argues that the alcohol exclusion in the AD&D policy must be stricken, contending that the language of the policy is ambiguous because it does not define "the illegal use of alcohol" and does not indicate "who" must be illegally using the alcohol for the exclusion to apply. The Court finds this argument without merit. By its plain terms, the alcohol exclusion applies where "[a]n accident . . . occurs while operating a motor vehicle involving the illegal use of alcohol." Here, such language clearly refers to Mr. Shaw's car accident that occurred while he was operating his wife's car under the influence of alcohol above Missouri's legal limit. It is well settled that ambiguities may not be injected into a contract where none exist.[14]

---

[12] Angela Heckman clarified the procedure followed in this case in a letter received by Prudential on December 13, 2006 (D00126). Ms. Heckman explained that between April 12 and April 20, 2006, at least 4 different tests were performed regarding Mr. Shaw's blood to reach the conclusion he had an alcohol level of 0.126% at the time of the accident (*Id.*; D00282). Ms. Heckman also related the procedures followed in the laboratory to ensure blood was not contaminated.

[13] Plaintiff presents additional arguments and evidence challenging Prudential's determination in this case, e.g. witness statements regarding whether witnesses recalled the smell of alcohol. However, to the extent that Plaintiff presents arguments and evidence that were not raised prior to the conclusion of the administrative claims process and the close of the administrative record, the Court will not consider these arguments. This order reviews only Defendant's September 28, 2007 decision, upholding, on second reconsideration, its determination that Plaintiff was not entitled to collect AD&D benefits. Because Plaintiff offers no reason as to why such information and arguments were not advanced earlier, the Court declines to consider them.

[14] *See, e.g., Bond v. Cerner Corp.*, 309 F.3d 1064, 1067-68 (8th Cir. 2002).

The Eighth Circuit recently considered a case analogous to the one before this Court and found no abuse of discretion. *River v. Edward D. Jones*, 646 F.3d 1029 (8th Cir. 2011). In *River,* the plaintiff claimed AD&D benefits under the decedent's ERISA plan after he died due to injuries sustained in a motorcycle accident. In denying coverage, the insurer relied, in part, on a certified toxicology report by the Missouri State Highway Crime Laboratory Division stating that the decedent's blood alcohol content was 0.128% at the time he died. Although several witnesses stated that right before the accident, the decedent did not appear to be intoxicated, under an arbitrary and capricious review, the Eighth Circuit specifically held that "[t]he toxicology report constituted evidence that a 'reasonable mind might accept as adequate to support a conclusion,' … and therefore satisfies the substantial evidence standard." *River*, 646 F.3d at 1034 (citing *Ratliff*, 489 F.3d at 346).

Plaintiff contends this case is distinguishable from *River* in two ways: (1) that there were no procedural irregularities alleged in the blood testing in that case; and (2) that the alcohol exclusion in *River* was more adequately defined than the exclusion in this case.[15] While there are small differences between the cases, they are sufficiently analogous to merit the same conclusion here. *River* stands for the proposition that a claims administrator can reasonably rely on a toxicology report, showing an alcohol level higher than the legal limit, to apply an alcohol exclusion in an AD&D policy. Accordingly, the Court finds that Prudential's determination to deny Plaintiff coverage due to the policy's alcohol exclusion was not unreasonable and must be upheld. *See also Lankford v. Webco, Inc.,* 545 F. Supp. 2d 961, 970-72 (W.D. Mo. 2008)

---

[15] In River, the alcohol exclusion provided that "We will not pay benefits under this section for any loss if the injured party is intoxicated at the time of the incident and is the operator of a vehicle or other device involved in the incident." Under the policy, the insured was deemed "intoxicated" when "[his or her] blood alcohol level met or exceeded the level that creates a legal presumption of intoxication under the laws of the jurisdiction in which the incident occurred." Here, the policy did not use the word "intoxicated." Rather, it said "involving the illegal use of alcohol," which the Court finds to be more clear than the use of the word "intoxicated."

(upholding a plan administrator's denial of coverage based on an exclusion for injuries resulting from the use of alcohol "in excess of a state or federal statute").

Thus, the Court finds that Prudential's decision to deny Plaintiff's claim for AD&D benefits, based on the alcohol exclusion in the AD&D policy, is supported by substantial evidence. Additionally, the Court finds that the Defendant offered an adequate and reasoned explanation for its denial of Plaintiff's claim, and conducted a fair process for doing so. Therefore, Defendant's decision is upheld. Because Prudential's decision to deny coverage based on the alcohol exclusion is reasonable, the Court declines to evaluate Prudential's decision to deny coverage based the AD&D policy's felony exclusion.

## Conclusion

Given the administrative record, the Court finds that a reasonable person could have come to the same determination as Prudential; such a determination is, therefore, not arbitrary and capricious. Defendant's motion for summary judgment on Count II is GRANTED (Doc. 91) and Plaintiff's motion for summary judgment is DENIED. The Court declines to award attorneys' fees.

**IT IS SO ORDERED.**

Date: August 9, 2012                    /s/ Greg Kays
                                        GREG KAYS, JUDGE
                                        UNITED STATES DISTRICT COURT